UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 10-40549-MSH |
| KATHLEEN THOMAS | ) | |
| Debtor. | ) | |
| | ) | |
| KATHLEEN THOMAS, | ) | |
| Plaintiff | ) | Adv. Pro. No. 10-04086 |
| v. | ) | |
| CITIMORTGAGE, INC., FLAGSTAR BANK, FSB and ALLIED HOME MORTGAGE CAPITAL CORPORATION, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION ON THE MOTION TO COMPEL ARBITRATION OF ALLIED HOME MORTGAGE CAPITAL CORPORATION, THE MOTION TO DISMISS OF FLAGSTAR BANK, FSB AND THE MOTION FOR JUDGMENT ON THE PLEADINGS OF FLAGSTAR BANK, FSB AND CITIMORTGAGE, INC.**

Before me is a motion of defendant Allied Home Mortgage Capital Corporation ("Allied") to compel arbitration, a motion of defendant Flagstar Bank, FSB ("Flagstar") to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P 7012 and a motion of Flagstar and CitiMortgage, Inc. ("CitiMortgage") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), made applicable by Fed. R. Bankr. P. 7012. Because the motions involve the same facts and underlying transaction, I will address them together.

1

**Background**

In 2006, the plaintiff, who is the debtor in the main bankruptcy case, engaged Allied to assist her in refinancing the mortgage on her home. On April 26, 2006, the plaintiff signed an arbitration agreement in which she agreed that any disputes with Allied would be resolved through arbitration. The refinancing transaction occurred on May 8, 2006, at which time the plaintiff executed a promissory note payable to Allied in the amount of $153,000, and a mortgage to secure her obligations under the note. Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for Allied and its successors and assigns, was named as mortgagee. The note was subsequently indorsed to defendant Flagstar. Flagstar and CitiMortgage claim that Flagstar indorsed the note in blank by way of an allonge and sold the plaintiff's loan to CitiMortgage. CitiMortgage attached a copy of the note to its motion for judgment on the pleadings to support this claim.[1] The last page of the note is blank except for the following legend:

> *PAY TO THE ORDER OF*
> *WITHOUT RECOURSE*
> *FLAGSTAR BANK, FSB*

There are two entirely illegible signatures under this legend. On August 3, 2009, MERS executed an instrument entitled "Assignment of Mortgage" which purported, inter alia, to assign to CitiMortgage the "mortgage and the note and claim secured thereby."

The plaintiff eventually fell behind in her mortgage payments and CitiMortgage began foreclosure proceedings. On February 2, 2010, the plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, in this court. On February 12, 2010, CitiMortgage filed a motion for relief from the automatic stay provisions of the Bankruptcy Code

---

[1] This copy differs from the copy attached to CitiMortgage's motion for relief from stay. *See* discussion below.

2

in order to proceed to foreclose its mortgage on the plaintiff's property. At a hearing on the motion for relief, I ordered the plaintiff to make adequate protection payments of $925 per month to CitiMortgage and upon the plaintiff's filing of her complaint, consolidated the motion for relief with this adversary proceeding.

The plaintiff alleges that the May 8, 2006 loan transaction violated the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws. ch. 183C ("Chapter 183C"). The plaintiff also alleges that the promissory note was never properly negotiated to CitiMortgage and that CitiMortgage may not assert a secured claim in her bankruptcy case.

On July 1, 2010, Flagstar filed a motion to dismiss the adversary proceeding. On July 2, 2010, Allied filed a motion to compel arbitration and to dismiss, arguing that pursuant to the arbitration agreement signed by the plaintiff, she is required to submit to arbitration with respect to her claims against Allied. On October 4, 2010, CitiMortgage filed a motion for judgment on the pleadings. On October 7, 2010, I held a hearing on Flagstar's motion to dismiss and Allied's motion to compel arbitration. On December 1, 2010, I held a hearing on CitiMortgage's motion for judgment on the pleadings. Flagstar subsequently moved to join CitiMortgage's motion and on December 23, 2010, I entered an order allowing Flagstar to do so.

## Analysis

**Allied's Motion to Compel Arbitration**

Allied argues that the arbitration agreement of April 20, 2006 obligates the plaintiff to submit her claims against Allied to binding arbitration and, therefore, seeks dismissal and an order compelling arbitration. Through the affidavit of Joseph James, Allied's senior counsel, Allied submitted a copy of the agreement on which it relies. The plaintiff has contested the enforceability of the agreement. The agreement is signed by the plaintiff only and not by Allied.

3

In fact, there is no reference to Allied by name anywhere in the agreement. Rather than identifying Allied by name, the agreement consistently refers to the plaintiff's counterparty obscurely using the pronouns "we", "our" and "us." The second paragraph of the agreement states that "[t]his Agreement is effective and binding on both you and your heirs, successors and assigns and us when it is signed by both parties."

Allied correctly observes that in Massachusetts a contract may be enforceable if signed by only one party if the other party manifests acceptance. *Haufler v. Zotos*, 446 Mass. 489, 498-99, 845 N.E.2d 322, 331(2006). Allied also notes specific cases in which courts enforced arbitration agreements lacking one party's signature. *Samincorp South American Minerals & Merchandise Corp. v. Lewis*, 337 Mass. 298, 302-03, 149 N.E.2d 385, 388 (1958); *Gvonzdenovic v. United Airlines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991).

While the law in Massachusetts may permit the enforcement of an arbitration agreement that is not signed by both parties, such would not be the case when the express language of the agreement requires the signature of both parties. In *All State Home Mortgage, Inc. v. Daniel*, 187 Md. App. 166, 977 A.2d 438 (2009), the Court of Special Appeals of Maryland addressed this issue with respect to a form of agreement nearly identical to the one in the present case. The court held that while a signature may not always be required for an arbitration agreement to be enforceable, an arbitration agreement that specifically provided for it to be "effective and binding to [sic] you and your heirs, successors and assigns and us when both parties sign it" established that execution by *both* parties was a condition precedent to enforcement of the contract. *Id.* at 171. Because the language of the arbitration agreement was unambiguous and because it was not signed by the lender, the court refused to enforce it. *Id.* at 183. Massachusetts contract law

4

appears to be no different than Maryland's in this regard. *See Tilo Roofing Co. v. Pellerin*, 331 Mass. 743, 7456, 122 N.E.2d 460, 462 (1954) (holding that if a condition precedent to the enforcement of a contract is "shown not to have been performed, the writing does not become a binding obligation."). The arbitration agreement between the plaintiff and Allied is explicit—both parties must sign before the agreement is "effective and binding." Because Allied did not sign the agreement, it never became binding on the parties and is unenforceable.

**Flagstar's Motion to Dismiss**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable here by Fed. R. Bankr. P. 7012, a court must review the complaint and the documents attached to it to determine if the complaint contains sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1966, 167, L. Ed. 2d 929 (2007); *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009). A court must accept as true the factual allegations of the complaint but not the legal conclusions, even if couched as facts. *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1947, 173 L. Ed.2d 868 (2009). Recitations of the elements of a cause of action supported only by legal conclusions are insufficient to withstand a motion to dismiss. *Id.*

In its motion, Flagstar seeks dismissal of Count I (violation of Chapter 183C) and Count II (determination of extent of mortgage lien due to Chapter 183C violation) of the plaintiff's complaint on the grounds that Chapter 183C is preempted by federal law because Flagstar is a federal savings bank. Flagstar notes that the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70 (2009) ("HOLA"), authorized the Office of Thrift Supervision ("OTS") (formerly the Federal Home Loan Bank Board) to promulgate regulations providing "for the organization, incorporation,

5

examination, operation, and regulation" of federal savings associations and federal savings banks (collectively referred to as "federal thrifts") such as Flagstar. *Id.* § 1464(a).

The OTS received broad rulemaking authority to preempt state laws that would otherwise govern the banking activities of federal thrifts. *Id.* § 1465; *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982). Accordingly the OTS promulgated a regulation, 12 C.F.R. § 560.2, occupying the field in connection with the lending operations of federal thrifts. This regulation expressly preempts state laws like Chapter 183C which regulate loan-related fees.[2] The OTS has issued interpretive letters concluding that the anti-predatory lending laws of New York, New Mexico, New Jersey, and Georgia are preempted by the federal scheme,[3] and courts have generally adopted the preemption approach. *See, e.g., Jarbo v. BAC Home Loan Servicing*, 2010 WL 5173825, (E.D. Mich.); *Coppes v. Wachovia Mortg. Corp.*, 2010 WL 4483817 (E.D. Cal.). It is clear, therefore, that federal thrifts are not subject to Chapter 183C with respect to loans they originate.

The calculus changes, however, when a federal thrift does not originate a loan but merely acquires it from a non-federal thrift lender. If a non-federal thrift lender could "cleanse" a predatory loan by selling it to a federal thrift, a vital component of many states' consumer protection regimes would be undermined. The OTS could not have intended this result when it promulgated its preemption regulation. *See, e.g. Viereck v. Peoples Sav. & Loan Ass'n.*, 343

---

[2] The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203 (2010) considerably reduced the degree to which HOLA and its regulations may preempt state consumer financial protection laws. See Dodd-Frank §§ 1044, 1046 (providing that HOLA preemption no longer occupies the field of banking regulation, and limiting preemption to specific conflicts between state and federal law). Because the plaintiff's loan was consummated before Dodd-Frank was enacted, the new preemption standard is inapplicable to this case.

[3] *See generally* Legal Opinions, Office of Thrift Supervision, *available at* http://www.ots.treas.gov/?p=LegalOpinions.

N.W.2d 30 (Minn. 1984) (preemption does not apply when a federal thrift purchases a loan from an institution not subject to preemption); *Garrison v. First Fed. Sav. & Loan Ass'n of S.C.*, 402 S.E.2d 25 (Va. 1991) (a federal thrift, as assignee of mortgage company which originated loan, is not entitled to preemption even though loan was one of large pool sold to it).

So if Flagstar were the originator of the plaintiff's loan, then federal preemption would dispossess the plaintiff from her Chapter 183C claims against it, but if Flagstar were an assignee who purchased the loan, then the plaintiff's state law claims against Flagstar survive preemption.

The loan documents attached to the plaintiff's complaint indicate that Allied, not Flagstar, was the lender in this transaction. In its motion to dismiss Flagstar supports this characterization stating that there "are no allegations that Flagstar originated the loan." Mot. to Dismiss at 4. Surprisingly, however, at one of the hearings on defendants' motions, Flagstar's counsel seemed to take a contrary position. He indicated that the loan had been "table-funded," meaning that Allied was the lender in name only, but really acted as the broker in the transaction on behalf of Flagstar, who actually funded the loan. Loans which are table-funded by federal thrifts would be subject to the federal preemption scheme of HOLA. *See, e.g.*, Comptroller of the Currency, Interpretive Letter # 1002 (May 13, 2004) (finding that a national bank would be considered the lender, and not subject to state anti-predatory lending laws, in a loan transaction table-funded by the national bank with a non-national bank broker listed as the lender).[4] Flagstar's curious

---

[4] National banks are established by the National Bank Act, 12 U.S.C. §§ 21-216d (2009), which has a similar preemption regime to that of HOLA, which applies to federal thrifts. *See, e.g., Aguayo v. U.S. Bank*, 658 F.Supp.2d 1226, 1234 (S.D. Cal. 2009) (quoting the Office of the Comptroller of the Currency's view that the similarity between the preemption regimes of the National Bank Act and HOLA "warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities." 69 Fed. Reg. at 1912 n. 62). In light of the OTS' policy of maximizing the preemptive effect of its regulations, it

7

inconsistencies notwithstanding, my field of vision with respect to a motion to dismiss is confined to the pleadings and the attachments thereto. Reviewing these in the light most favorable to the plaintiff, I conclude that the plaintiff has stated a claim that Flagstar was an assignee of the plaintiff's lender, Allied. Therefore, Chapter 183C is not preempted with respect to this transaction and I must deny Flagstar's motion to dismiss Counts I and II of the complaint.

**CitiMortgage and Flagstar's Motion for Judgment on the Pleadings**

Having declined to grant Flagstar's motion to dismiss on preemption grounds, I turn to the motion for judgment on the pleadings.[5] The standard in deciding a motion for judgment on the pleadings under Rule 12(c) is similar to that applied to a motion to dismiss under Rule 12(b)(6). *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (noting that the standard is the same for Rule 12(b)(6) and 12(c) motions).

Counts I and II of the Complaint

Chapter 183C, §§ 2 and 3 categorize certain consumer home mortgage loans as high cost home mortgage loans ("high cost loans") and render them unenforceable unless an approved housing agency certifies to the lender or broker that the borrower received pre-closing counseling on the advisability of the transaction. The plaintiff alleges that her loan is unenforceable because it is a high cost loan made in the absence of the required counseling.

The defendants do not dispute the fact that the plaintiff received no counseling. Rather, the dispute is over whether the loan is a high cost loan. The plaintiff argues that her mortgage loan meets the definition of a high cost loan because the "points and fees" associated with the loan,

---

follows that the OTS, like the Comptroller of the Currency, would conclude that a federal thrift in a table-funded transaction is considered to be the lender for purposes of preemption analysis.

[5] In doing so, I will address Flagstar's arguments from its motion to dismiss with respect to Count III of the complaint together with those of CitiMortgage.

as defined by Chapter 183C, § 2,[6] net of up to two bona fide discount points, exceeded five percent of the total loan amount. To support this allegation, the plaintiff included in her complaint a list of charges from the loan settlement statement that she argues qualify as points and fees. The total of

---

[6] Section 2 provides as follows:
> "Points and fees", (i) items required to be disclosed pursuant to sections 226.4 (a) and 226.4 (b) of Title 12 of the Code of Federal Regulations or 209 CMR 32.04(1) and 209 CMR 32.04(2) of the Code of Massachusetts Regulations, as amended from time to time, except interest or the time-price differential; (ii) charges for items listed under sections 226.4 (c) (7) of Title 12 of the Code of Federal Regulations or 209 CMR 32.04(3)(g) of the Code of Massachusetts Regulations, as amended from time to time, but only if the lender receives direct or indirect compensation in connection with the charge, otherwise, the charges are not included within the meaning of the term "points and fees"; (iii) the maximum prepayment fees and penalties that may be charged or collected under the terms of the loan documents; (iv) all prepayment fees of [sic] penalties that are incurred by the borrower if the loan refinances a previous loan made or currently held by the same lender; (v) all compensation paid directly or indirectly to a mortgage broker, including a broker that originates a home loan in its own name in a table-funded transaction, not otherwise included in clauses (i) or (ii); (vi) the cost of all premiums financed by the creditor, directly or indirectly for any credit life, credit disability, credit unemployment or credit property insurance, or any other life or health insurance, or any payments financed by the creditor directly or indirectly for any debt cancellation or suspension agreement or contract, except that insurance premiums or debt cancellation or suspension fees calculated and paid on a monthly basis shall not be considered financed by the creditor. Points and fees shall not include the following: (1) taxes, filing fees, recording and other charges and fees paid to or to be paid to a public official for determining the existence of or for perfecting, releasing or satisfying a security interest; and, (2) fees paid to a person other than a lender or to the mortgage broker for the following: fees for flood certification; fees for pest infestation; fees for flood determination; appraisal fees; fees for inspections performed before closing; credit reports; surveys; notary fees; escrow charges so long as not otherwise included under clause (i); title insurance premiums; and fire insurance and flood insurance premiums, if the conditions in sections 226.4 (d) (2) of Title 12 of the Code of Federal Regulations or 209 CMR 32.04(4)(b) of the Code of Massachusetts Regulations, as amended from time to time, are met. For open-end loans, the points and fees shall be calculated by adding the total points and fees known at or before closing, including the maximum prepayment penalties that may be charged or collected under the terms of the loan documents, plus the minimum additional fees the borrower would be required to pay to draw down an amount equal to the total credit line.

these charges is $10,446.44, which exceeds five percent of the $153,000 loan. CitiMortgage and Flagstar argue that many of these charges do not qualify as points and fees, and the ones that do total significantly less than $7650, which is five percent of the loan amount.[7]

There is no dispute that $4879 of charges constitute points and fees under the statute. If the pleadings support a minimum of $2772 in additional points and fees then the plaintiff will have stated a claim which survives the defendants' motion.

Line 802 of the settlement statement reflects a charge in the amount of $2255.22 described as "Loan Discount to Allied Home Mortgage Capital Corp." All compensation to a lender or mortgage broker, "including a broker that originates a home loan in its own name in a table funded transaction," is included in the definition of points and fees under the statute, with the exception of up to two "bona fide discount points." Chapter 183C, § 2. The defendants argue that the $2255.22 loan discount charge, which amounts to 1.474% of the loan, or 1.474 discount points, falls within the exception. The plaintiff argues that whether these discount points are bona fide is a question of fact that may not be decided as part of a motion for judgment on the pleadings.

To be a bona fide discount point, a charge must be "(1) knowingly paid by the borrower; (2) paid for the express purpose of lowering the benchmark [interest] rate; and (3) in fact reduc[es] the interest rate or time-price differential applicable to the loan from an interest rate which does not exceed the benchmark rate." Chapter 183C, § 2. Nothing in the record indicates whether the plaintiff was aware of the loan discount charge, whether she knowingly paid the fee for the purpose of getting a discounted interest rate, or, most significantly, whether the interest rate reflected in the note was in fact discounted from the benchmark rate in effect at the time. For the purpose of the

---

[7] In her complaint, the plaintiff incorrectly calculated that five percent of the loan amount is $7950.

10

motion for judgment on the pleadings, therefore, I must find that the loan discount fee is not excluded from the points and fees used in determining whether the loan is a high cost loan.

Line 1107 reflects a $460 charge described as "Attorney's fees to Viera & DiGianfilippo, Ltd." While Chapter 183C, § 2 provides that certain fees commonly charged by closing attorneys, defined as "real-estate related fees" by 12 C.F.R. § 226.4(c)(7) and 209 Mass. Code Regs. § 32.04(3)(g), are not counted as points and fees, legal fees generally are included in the definition of points and fees. *Cf.* Official Staff Interpretations to 12 C.F.R. § 226.4(c)(7), 12 C.F.R. Pt. 226, Supp. I (explaining that for the purpose of calculating a loan's finance charge under the federal Truth in Lending Act, if a settlement statement includes a single line item representing attorney's fees where only a portion of the services rendered were real-estate related fees as defined by § 226.4(c)(7), the portion of the fees not covered by § 226.4(c)(7) must be included in the finance charge.). In addition to the $460 attorney's fee, the settlement statement includes charges for "Document preparation" and "Title examination," both of which are clearly real-estate related fees that are excluded from the points and fees calculation. The fact that these charges have been listed separately on the settlement statement is evidence that the generic attorney's fee charge is not a real-estate related fee. The defendants argue unconvincingly that because attorneys are officers of the court, their fees fall under the statutory exclusion for "fees paid to or to be paid to a public official for determining the existence of or for perfecting, releasing or satisfying a security interest." 12 C.F.R. § 226.4(e)(1). While attorneys are officers of the court, they are not public officials nor are the fees paid to them for legal services merely for perfecting, releasing or satisfying a security interest. Thus I find that the entire $460 charge for attorney's fees constitutes points and fees.

11

Line 1205 of the settlement statement includes a $65 charge to "Record Municipal Lien Certif[icate] to Commonwealth of MA." The complaint alleges that no municipal lien certificate was ever recorded with respect to this transaction. Thus, at this stage of the proceeding, this charge too must be included in points and fees.

The sum of the loan discount charge, the attorney's fees and lien certificate recording fee is $2780.22. Adding this to the undisputed charges of $4879 brings the total points and fees to $7659.22, which is more than five percent of the total loan amount. Thus, I need not determine whether any of the remaining charges alleged by the plaintiff qualify as points and fees. The plaintiff has stated a prima facie claim that her loan is a high cost loan made in violation of Chapter 183C, and, therefore, I must deny the motion for judgment on the pleadings with respect to Counts I and II of the complaint.

Count III of the Complaint

In Count III of the complaint, the plaintiff alleges that her promissory note payable to Allied was never properly transferred to CitiMortgage, and as a result, CitiMortgage has no valid secured claim against her bankruptcy estate. The allegation is based on the fact that the copy of the note attached to CitiMortgage's motion for relief from stay in the main bankruptcy case includes no indorsement transferring the note CitiMortgage. CitiMortgage attached a different version of the note to its motion for judgment on the pleadings, which includes an additional page containing the "pay to the order" language quoted at the outset of this memorandum. CitiMortgage and Flagstar claim that the last page is an "allonge" by which Flagstar indorsed the note in blank and then transferred the note to CitiMortgage, giving CitiMortgage the right to enforce it. The Plaintiff argues that the existence of this second copy of the note raises the

12

question as to whether the allonge effectively transferred Flagstar's rights in the note to CitiMortgage.

Under Mass. Gen. Laws ch. 106, the Massachusetts version of the Uniform Commercial Code (the "UCC"), for a negotiable instrument to be transferred by indorsement, the indorsement must be on the instrument itself. UCC § 3-204(a). A "paper affixed to the instrument" is considered to be part of the instrument for purposes of § 3-204(a). *Id.* To be effective, therefore, an allonge must be *affixed* to a promissory note. *See, e.g., In re Shapoval*, 2010 WL 4811786, *2 (Bankr. D. Mass. 2010). If the purported allonge signed by Flagstar is not affixed to the note, then despite having possession of the note, CitiMortgage lacks the status of "holder" as defined by UCC § 1-201(20).[8] Given that CitiMortgage has produced two different copies of the note—one with and one without the purported allonge—the plaintiff argues that there is a question of fact as to whether the allonge is affixed to the note, and therefore whether CitiMortgage has a valid claim in her bankruptcy case.

Even if it is not the "holder" of the note, however, CitiMortgage may be entitled to enforce the note. UCC § 3-203(2) provides that the transfer of a negotiable instrument, "whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument." The official commentary to this section explains that while the transferee of an instrument may enforce the instrument without being its holder, the transferee, unlike a holder, is

---

[8] The "holder" of a negotiable instrument is "the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. UCC § 1-201(20).

13

not entitled to the presumption of the right of enforcement, and must prove the transaction through which the instrument was acquired. UCC § 3-203, § 2, cmt. 1 (1999).[9]

In its answer, CitiMortgage asserts that it has physical possession of the note indorsed in blank by Flagstar. If the allonge is not effective because it was not affixed to the note, CitiMortgage must then prove the transaction through which it acquired the note from Flagstar. It did not plead any facts about this transaction in its answer, however. With no allegation in the pleadings to support how CitiMortgage acquired the note, I must rely on the plaintiff's well-pleaded allegations that the note was not properly transferred to CitiMortgage.[10]

---

[9] The commentary states:
> Subsection (b) states that transfer vests in the transferee any right of the transferor to enforce the instrument "including any right as a holder in due course." If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. Because the transferee's rights are derivative of the transferor's rights, those rights must be proved. Because the transferee is not a holder, there is no presumption under Section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired. it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder. At that point the transferee is entitled to the presumption under Section 3-308.

[10] Flagstar filed the affidavit of Sharon Morgan, its assistant vice president, in support of its motion to dismiss. In the affidavit, Ms. Morgan claims that the plaintiff's loan was sold to CitiMortgage on September 16, 2006. I note that Fed. R. Civ. P. 12(d), made applicable by Fed. R. Bankr. P. 7012, provides that when matters outside the pleadings are presented to the court, and not excluded, a motion for judgment on the pleadings is to be treated as a motion for summary judgment. CitiMortgage waived this right, however, at the hearing on the motion for judgment on the pleadings by declining my offer to treat the motion as one for summary judgment. Given that I am limited on a motion for judgment on the pleadings to reviewing the pleadings and documents attached thereto, I have not considered Ms. Morgan's affidavit in this analysis.

14

Furthermore, CitiMortgage may not rely on the recorded assignment of the plaintiff's mortgage from MERS to CitiMortgage as evidence that the note was transferred to it. While the assignment purports to assign both the mortgage and the note, MERS, which is a registry system that tracks the beneficial ownership and servicing of mortgages, was never the holder of the note, and therefore lacked the right to assign it. While MERS was the mortgagee of record, it was acting only as nominee for Allied, its successors and assigns. MERS is never the owner of the obligation secured by the mortgage for which it is the mortgagee of record. *See, e.g., Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 536, 216 P.3d 158, 164 (2009) (providing a profile of MERS).

The plaintiff's claim that CitiMortgage lacks a valid secured claim, therefore, survives the motion for judgment on the pleadings.

## Conclusion

Based on the foregoing, I will deny the motion to compel arbitration, the motion to dismiss and the motion for judgment on the pleadings. Separate orders shall enter.

Dated: February 9, 2011                                                             By the Court,

                                                                                    _____
                                                                                    Melvin S. Hoffman
                                                                                    U.S. Bankruptcy Judge