**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>KATHLEEN A. THOMAS<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>Case No. 10-40549-MSH |
| KATHLEEN A. THOMAS,<br><br>Plaintiff<br><br>v.<br><br>CITIMORTGAGE, INC., FLAGSTAR BANK, FSB, AND ALLIED HOME MORTGAGE CAPITAL CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adv. Pro. No. 10-4086 |

**MEMORANDUM OF DECISION ON DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND CITIMORTGAGE, INC.'S MOTION FOR RELIEF FROM STAY**

The defendants, CitiMortgage, Inc. ("CitiMortgage"), Flagstar Bank, FSB ("Flagstar") and Allied Home Mortgage Capital Corporation ("Allied"), have moved for summary judgment on the remaining two counts[1] of the complaint filed by the debtor-plaintiff, Kathleen Thomas. The defendants base their motion primarily on their assertion that Flagstar "table-funded" Ms. Thomas' loan, which they assert is the functional equivalent of being the original lender, and as a federally chartered savings bank, Flagstar and its assignee, CitiMortgage, are exempt from the

---

[1] The parties previously agreed to a voluntary dismissal without prejudice of count III.

1

disclosure requirements imposed by the Massachusetts Predatory Home Loan Practices Act, MASS. GEN. LAWS ch. 183C ("Chapter 183C"), because the state statute has been preempted by federal law. Ms. Thomas opposes summary judgment claiming that the disclosure requirements of Chapter 183C have not been preempted by federal law, and adding as additional support for her argument, although without citation to any law, that she did not understand she was paying points in order to receive a lower interest rate on her loan and that in fact she did not receive a lower rate. CitiMortgage also filed a motion for relief from stay in the main bankruptcy case which I consolidated with this adversary proceeding because the enforceability of the note now held by CitiMortgage is at issue in this proceeding.

## Facts

The facts relevant to the motion presently before me are drawn from the affidavits and exhibits thereto submitted: by Ms. Thomas, and her attorney, Laird Heal; by employees of Flagstar, Michelle Parkison, Marie A. Ralko, Misty McMahon, and Nicole Sinacola; by Bryan J. Schrepel, a bankruptcy specialist for CitiMortgage; and by Gregory Blase, counsel to CitiMortgage. Additional background information may be gleaned from a previous decision in this adversary proceeding denying Allied's motion to compel arbitration and Flagstar's motion to dismiss reported as *Thomas v. CitiMortgage, Inc. (In re Thomas)*, 447 B.R. 402 (Bankr. D. Mass. 2011) ("*Thomas I*").

In 2006 Ms. Thomas contacted Allied in connection with refinancing the mortgage on her home.[2] Allied arranged for the loan with Flagstar. As was its practice when a prospective

---

[2] Ms. Thomas denies that she engaged Allied as a mortgage broker and argues in her opposition to summary judgment that in *Thomas I* I found that Allied was the lender. This argument mischaracterizes the decision in *Thomas I* which found that on the record then before me and

2

borrower locked in an interest rate in connection with a loan application, Flagstar issued to Allied on April 19, 2006 a "Rate Lock Confirmation" for Ms. Thomas' refinancing.[3] The Rate Lock Confirmation, which bears the notation "Broker Services" in the upper right-hand corner of its first page, stated that the locked-in rate was 5.875% and was good for a period of 30 days from April 19, 2006.[4] The locked-in rate required a payment of a loan discount fee of $2,255.22 at the closing.[5] Without the payment of the discount loan fee the rate for the loan would have been 6.250%.[6] The confirmation notes that the loan is to be closed in Allied's name.

By a "Purchase Commitment Letter" dated May 4, 2006 written on Flagstar's letterhead, Flagstar informed Ms. Thomas that the proposed refinancing met the requirements for Flagstar to purchase the loan subject to certain conditions set forth in the letter. Among the conditions were that Flagstar Bank was to receive the first and only lien on Ms. Thomas' property, that title insurance had to be received by Flagstar prior to the closing, that Ms. Thomas' hazard insurance policy was to name Flagstar and its successors and assigns as beneficiaries and be issued by an insurance company acceptable to Flagstar, and that "[t]his loan is to be closed on a MERS

---

viewing the facts most favorably to the plaintiff as required in deciding a motion to dismiss, Ms. Thomas had stated *a claim* that Flagstar was the assignee of Allied. *Thomas I*, 447 B.R. at 408.

[3] Parkinson Affidavit at ¶¶ 2&3 and Exhibit A (hereinafter "Rate Lock Confirmation"). At her deposition Ms. Thomas testified that her application and the good faith estimate she subsequently received reflected a discount fee that she was to pay to receive a lower interest rate. Thomas deposition Tr. at 59, line 4 to 60, line 3.

[4] Rate Lock Confirmation. Although Ms. Thomas has denied that she locked in the 5.75% interest rate on or about April 19, 2006 and that the rate was good for 30 days, she has offered nothing to support her denial. *See* Plaintiff's Statement of Undisputed and Disputed Facts.

[5] Parkison Affidavit at ¶¶ 8-14.

[6] Parkison Affidavit at ¶¶ 8-14 and Exhibit B thereto.

Security Instrument."[7] The letter also noted that the rate lock would expire on May 19, 2006. The letter identified Allied as the "originator." It also required the "Broker" to "approve and/or close" the loan. Based on the Purchase Commitment Letter and the Rate Lock Confirmation, Allied is referred to as both the originator and broker of the loan and the terms are used interchangeably.

The letter contained several events, the occurrence of any of which would allow Flagstar to terminate its commitment to purchase the loan, including the following:

> This Loan Purchase Commitment is void if this loan bears rates and/or fees above a certain percentage and/or amount which would require a special disclosure as defined in the Riegle Community Development and Regulatory Improvement Act of 1994 (Pub. L. 103-325 Stat. 2160) enacted in September 1994, containing the Home Ownership and Equity Protection Act of 1994 Required [sic] by 12 CFR 226 32 (requirements for certain closed-end home mortgages).

On May 8, 2006 Ms. Thomas executed a $153,000 promissory note payable to Allied. Ms. Thomas' obligations under the note were secured by a mortgage in favor of Mortgage Electronic Registration System ("MERS") solely as nominee for Allied and its successors and assigns. Ms. Thomas also signed a HUD-1 Settlement Statement at the closing.[8] The HUD-1 indicates that Ms. Thomas paid a loan discount fee of $2,255.22.

By letter dated May 8, 2006 Allied notified Ms. Thomas that the servicing of her loan was being assigned or transferred to Flagstar.[9] On May 12, 2006 Flagstar wired $148,763.18 to Citizens Bank of Rhode Island, which apparently held the mortgage that was paid off as part of

---

[7] Affidavit of Nicole Sinacola at Exhibit A.

[8] Exhibit D to the Blase Affidavit.

[9] Exhibit E to the Blase Affidavit

4

the refinancing.[10] Flagstar received physical possession of the note on May 15, 2006.[11] A notation on the lower left hand corner of page 2 of the note indicates that the note was assigned without recourse from Allied to Flagstar.[12] The endorsement is not dated. The note was subsequently endorsed in blank by Flagstar. CitiMortgage took physical possession of the note on or about September 12, 2006.[13]

## Statutory and Regulatory Framework

Chapter 183C imposes requirements and disclosures beyond those required under the Massachusetts Consumer Credit Cost Disclosure Act, MASS. GEN . LAWS ch. 140D ("MCCCDA"), for mortgage loans which meet the definition of "high-cost loans." In this case Ms. Thomas relies upon that portion of the statute which includes as a high-cost home mortgage loan one in which the total applicable points and fees exceed the greater of $400[14] or 5% of the loan amount.[15] Chapter 183C, § 2. Among the additional protections afforded to a borrower which are triggered if a loan is a high cost loan under Chapter 183C is the requirement that the lender obtain a certification that the borrower has received counseling from an approved third

---

[10] Affidavit of Marie A. Ralko and Exhibit A thereto

[11] Affidavit of Misty McMahan

[12] Exhibit A to the Affidavit of Bryan J, Schrepel

[13] Schrepel Affidavit

[14] Although the statute provides for the annual adjustment of the $400 amount based on the Consumer Price Index, no party has asserted that on the date of the closing of Ms. Thomas' loan the $400 had been increased.

[15] Under the statute, either a conventional prepayment penalty or up to two bona fide discount points are excluded from the total points and fees for purposes of applying the $400 or 5% formula.

party prior to finalizing the loan. *Id.* at § 3. In addition the lender must reasonably believe that the borrower has the ability to make the scheduled payments to repay the loan. *Id.* at § 4.[16] The lack of certification or a reasonable belief as to the borrower's ability to repay the loan renders the loan unenforceable. *Id.* at §§ 3 and 4.

Congress enacted the Home Owners' Loan Act of 1933 (12 U.S.C. §§ 1461–1468) ("HOLA"), in order to "charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1004 (9th Cir. 2008). "HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'" *Id.* HOLA authorized the Federal Home Loan Board, which became the Office of Thrift Supervision (the "OTS"), which, since the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub.L. 111-203, 124 Stat. 1376 (July 21, 2010), has been merged into the Office of the Comptroller of the Currency (the "OCC"), to promulgate regulations providing "for the organization, incorporation, examination, operation, and regulation" of federal savings associations and federal savings banks [collectively referred to as "federal thrifts"] such as Flagstar. *Id.* § 1464(a). As explained in *Thomas I*:

> The OTS received broad rulemaking authority to preempt state laws that would otherwise govern the banking activities of federal thrifts. *Id.* § 1465; *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Accordingly the OTS promulgated a regulation, 12 C.F.R. § 560.2, occupying the field in connection with the lending operations of federal thrifts. This regulation expressly preempts state

---

[16] The lender's belief is presumed reasonable if the borrower's income meets the residual income guidelines as set forth in 38 C.F.R. § 36.4337(e) and VA form 26-6393.

6

>laws like Chapter 183C which regulate loan-related fees.[17] The OTS has issued interpretive letters concluding that the anti-predatory lending laws of New York, New Mexico, New Jersey, and Georgia are preempted by the federal scheme, and courts have generally adopted the preemption approach. *See, e.g., Jarbo v. BAC Home Loan Servicing,* 2010 WL 5173825, (E.D.Mich.); *Coppes v. Wachovia Mortg. Corp.,* 2010 WL 4483817 (E.D.Cal.). It is clear, therefore, that federal thrifts are not subject to Chapter 183C with respect to loans they originate.

*Thomas I*, 447 B.R. at 406 -407 (footnotes omitted).

In 1994 Congress amended the Truth in Lending Act ("TILA") (15 U.S.C. § 1601 et seq.) with the enactment of the Home Ownership and Equity Protection Act ("HOEPA") (15 U.S.C. § 1639). Like Chapter 183C, HOEPA provides additional protections to consumers and requires additional disclosures for certain types of mortgage loans, generally based on the annual percentage rate or the total amount of points and fees paid. 15 U.S.C. § 1602(bb).[18] The total amount of points and fees charged cannot exceed the greater of 8% of the total loan amount or

---

[17] As noted in *Thomas I*, Dodd-Frank has considerably reduced HOLA's preemption of state law. See Dodd–Frank §§ 1044, 1046 (providing that HOLA preemption no longer occupies the field of banking regulation, and limiting preemption to specific conflicts between state and federal law). Because the transaction at issue here was consummated before the enactment of Dodd-Frank, the cutbacks on HOLA's preemption are not applicable to this case. *See also Sovereign Bank v. Sturgis*, --F. Supp.2d--, 2012 WL 1014607, at *27 n.9 (D. Mass. March 22, 2012). Dodd-Frank makes this clear by providing that:

>This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

[18] Section 1602(bb) was formerly codified as § 1602(aa). Dodd-Frank has also amended HOEPA in part by including the timing of or amount of prepayment penalties as an additional trigger for HOEPA protections. Dodd-Frank § 1431. Dodd-Frank has not changed the applicable triggers for the APR or total points and fees that launch HOEPA protections.

7

$400 without activating HOEPA's additional protections and disclosures.[19] Loans subject to HOEPA but which were made without complying with HOEPA's protections are subject to rescission under TILA's rescission provisions. 15 U.S.C. § 1635(b).

## Positions of the Parties

Ms. Thomas asserts that the original lender of her 2006 loan was Allied not Flagstar and since Allied was not a federally chartered savings bank, Chapter 183C, not HOLA and HOEPA, govern the transcaction. She claims that the applicable points and fees charged in the loan transaction totaled either $10,446.44 or $8,191.22[20] both of which exceed 5% of the loan amount ($7,650.00) and because she did not receive the additional protection and disclosures required by Chapter 183C, the note and consequently the mortgage are unenforceable. Ms. Thomas concedes that if HOEPA rather than Chapter 183C applied to her loan, there would be no violation because the applicable points and fees do not exceed HOEPA's higher threshold of 8% ($12,240).

In her opposition to summary judgment Ms. Thomas quarrels with the characterization of the $2,255.22 fee as a "loan discount fee" because she claims to have no knowledge that the fee was imposed to reduce her interest rate. And although she has not pled fraud or misrepresentation, she also disputes that the discount fee actually resulted in a rate reduction

---

[19] HOEPA, like Chapter 183C, includes within its definition of high cost mortgage loans, those in which the annual percentage rate exceeds certain benchmarks but as noted previously, Ms. Thomas is not alleging the loan's APR triggered the additional protections. Similarly HOEPA provides for an adjustment of the $400 threshold based upon the Consumer Price Index but whether there has been an adjustment to that figure is not relevant to this proceeding.

[20] The difference in the figures is attributable to the discount fee $2,255.22 paid to Flagstar. Whether the discount fee should be included in the fees and points calculation is, according to Ms. Thomas, "ambiguous." A determination of whether the discount fee should be included in the points and fees calculation is not necessary to the resolution of the defendants' motion.

because she maintains she was offered a rate of 5.75%, not the 5.875% rate which the note bears.[21]

The defendants assert that Flagstar, a federally chartered savings bank, table-funded the 2006 loan and was thus the originating lender which means the transaction is governed by the federal statutes which preempt Chapter 183C. Thus the applicable federal disclosure statute for high cost loans would not be not triggered unless the total fees and points exceeded the greater of 8% or $400 which they did not. Furthermore, they assert that even if the 5% threshold of Chapter 183C applied, the total applicable fees and points charged to Ms. Thomas would fall below that threshold as well.

## Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), made applicable by Fed. R. Bankr.P. 7056. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (quoting *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 427 (1st Cir.1996)). "Material" means that a disputed fact has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. NW. Airlines, Inc.* 56 F.3d 313, 314–15 (1st Cir.1995). The moving party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to

---

[21] Despite not having pled such causes of action in her complaint, Ms. Thomas apparently relies on them as providing another basis for rescinding the loan.

9

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

A party disputing a material fact must do so by "citing to particular parts of materials in the record…." Fed. R. Civ. P. 56(c)(1)(A). Denials, without more, are insufficient to create a factual dispute. *Tomsic v. Sales Consultants of Boston, Inc. (In re Salience Associates, Inc.)*, 371 B.R. 578, 585 (Bankr. D. Mass. 2007).

## Discussion

Ms. Thomas argues that HOLA and HOEPA did not preempt Massachusetts law and therefore the lower threshold imposed by Chapter 183C for what constitutes a high cost loan controls. She bases this argument on the fact that none of the interpretive letters issued by the OTS (listed in *Thomas I*) specifically addresses Massachusetts law. Ms. Thomas misses the point. Unlike TILA, for which exemptions are issued on a state by state basis to those states, including Massachusetts, whose "mini-TILA" statutes provide the functional equivalent of certain sections of TILA,[22] the interpretive letters of the OTS contain statements of general

---

[22] The Board of Governors of the Federal Reserve System, acting pursuant to its authority under

10

applicability and are to be applied in determining whether similar types of state statutes were preempted by the federal scheme. Even a cursory review of the OTS's interpretive letters reveals that any state statute which imposes disclosure requirements and protections for high-cost loans originated by federally chartered institutions is preempted by federal law.[23]

The parties agree that if Flagstar is deemed the original lender in the 2006 transaction then the federal standards apply. Ms. Thomas, however, asserts that Allied, not Flagstar, was the lender. But in fact, at her deposition she testified that Flagstar was the entity making the loan.[24]

The only conceivable basis for not considering Flagstar the original lender is the fact that it table-funded the loan.[25] None of the statutes or regulations thus far analyzed defines "table-funded." However, regulations promulgated by the Secretary of the Department of Housing and Urban Development pursuant to her authority under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 define table funding as a "settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person

---

§ 1633 of TILA and the procedure established in 12 C.F.R. 226, App.B, has exempted credit transactions subject to the Massachusetts Consumer Credit Cost Disclosure Act, MASS. GEN. LAWS ch. 140D, from chapters two and four of TILA to the extent the MCCCDA is not inconsistent with TILA. *See* 48 Fed. Reg.14882, 14890 (April 6, 1983).

[23] *See generally* Legal Opinions, Office of Thrift Supervision, *available at* http:// www. ots. treas. gov/? p= Legal Opinions.

[24] Affidavit of Gregory N. Blase, Exhibit A at p. 58 (hereinafter, "Thomas Deposition Tr.")

[25] In *Thomas I* I determined that the OTS (which as of July 21, 2011 was merged into the OCC) would likely conclude that a federal thrift which table-funded a transaction would be considered the lender based on a May 13, 2004 interpretive letter by the OCC to that effect. *Thomas I*, 447 B.R. at 408 and n.4.

11

advancing the funds." *See, e.g.,* 24 C.F.R. § 3500.2.[26] This definition makes a table-funder the functional equivalent of the original lender.

In this proceeding Flagstar has established that it table-funded Ms. Thomas' loan. Flagstar advanced the funds used to pay off the prior mortgage by directly wiring those funds to the former mortgagee on May 12, 2006 (a Friday), after the three-day right of rescission had expired. Allied executed an assignment without recourse of the note to Flagstar and while the endorsement is undated, Flagstar received physical possession of the note on Monday, May 15, 2006. Thus I conclude that Flagstar, having funded the loan and on the next business day taken possession of the assigned note, is the original lender of the 2006 loan to Ms. Thomas. Consequently, as a federal thrift Flagstar cannot be held liable under Chapter 183C because the state statute is preempted by the version of HOLA applicable to the transaction. As Ms. Thomas concedes, if Chapter 183C is not applicable to her loan, there is no violation of the high-cost loan standards. CitiMortgage, Flagstar's assignee, is likewise protected. *Tolliver v. Bank of America (In re Tolliver)*, 464 B.R. 720, 739 (Bankr. E.D.Ky. 2012) (citing In *Bliss v. Intervale Mortg. Corp.,* Case No. 051137C, 2006 WL 6211986, at *6 (Mass.Super. June 23, 2006)). Because Allied was never the lender but merely the broker, and since Ms. Thomas has not asserted any causes of action against Allied in its capacity as the broker, it too is not liable.

Ms. Thomas' also alleges that she did not understand that she was paying a discount fee to receive an interest rate reduction on the loan. But her own testimony belies this claim. At her

---

[26] Courts have applied this definition in cases where a party seeks to impose liability under statutes other than RESPA. *See, e.g. Easter v. American West Financial*, 381 F.3d 948, 955 (9th Cir. 2004); *Beneficial Hawaii, Inc. v. Kida*, 96 Hawa'i 289, 308, 30 P.3d 895, 914 (Hawai'i 2001).

12

deposition Ms. Thomas testified as follows:[27]

> Q: So this is the same discount – the same discount is showing up on the HUD 1 Settlement Statement at Exhibit 13?
>
> A: Correct.
>
> Q: And it's being paid by you on the HUD 1 Settlement Statement?
>
> A: Yes.
>
> Q: To Allied?
>
> A: Allied, correct.
>
> Q: And the purpose of that is to lower the loan interest rate, correct?
>
> A: I was under that impression, yes.

In any event, this allegation was not raised in Ms. Thomas' complaint, surfacing instead for the first time in her opposition to the motion for summary judgment. Similarly, Ms. Thomas' claim that she was told her interest rate would be 5.75% is raised for the first time in her opposition and is contradicted by the Rate Lock Letter. The note which Ms. Thomas signed at the closing bears a stated interest rate of 5.875% per annum.[28] I find those "claims" not raised by Ms. Thomas in

---

[27] Thomas Deposition Tr. at 59-60. Ms. Thomas' deposition took place on October 28, 2011. The parties apparently received copies of the transcript on or about November 10, 2011. On February 17, 2012 Attorney Heal filed his affidavit in support of Ms. Thomas' opposition to the summary judgment motion. Attached as Exhibit D to the Heal Affidavit is a purported errata sheet signed by Ms. Thomas on February 14, 2012 in which she attempted to change her testimony that she was under the impression she was paying a discount fee to lower the interest rate on the loan to the following: "I am not sure I completely understand it at all at this point." The defendants moved to strike the errata sheet and, after a hearing, I granted their motion.

[28] In her affidavit Ms. Thomas raises for the first time her medical history and the fact that she had a glass of wine on the table during the loan closing, apparently in an attempt to void the transaction based on her self-proclaimed incompetence. I decline to consider this eleventh hour argument as well.

her complaint to be lacking in merit and insufficient to avoid summary judgment.[29]

## Conclusion

For the reasons set forth herein, I find that there is no genuine issue of material fact and the defendants are entitled to summary judgment as a matter of law on counts I and II of the complaint. A separate judgment shall enter for the defendants. With respect to CitiMortgage's motion for relief from stay, while it appears that Ms. Thomas's opposition is based on her claims in this adversary proceeding which have now been resolved in favor of defendants, I will afford the parties 14 days to file any supplemental memoranda or other pleadings they deem appropriate before determining if further proceedings on the motion for relief from stay are necessary.

Dated: August 27, 2012                                                          By the Court,

                                                                                 /s/ Melvin S. Hoffman
                                                                                 Melvin S. Hoffman
                                                                                 U.S. Bankruptcy Judge

cc:     Laird Heal
        Sterling, MA
        Counsel for plaintiff Kathleen Thomas

        Gregory Blase
        Boston, MA
        Counsel for defendant CitiMortgage, Inc.

        Donn A. Randall

---

[29] Ms. Thomas commenced this adversary proceeding in June 2010; the loan closed in May 2006. Even if Ms. Thomas were permitted to assert claims based on these allegations, the three year statute of limitations applicable to HOEPA and TILA has run. *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)). *In re Community Bank of N. Va.,* 418 F.3d 277, 304–05 (3d Cir.2005).

Boston, MA
Counsel for defendant Flagstar Bank, FSB

David P. Mason
Boston, MA
Counsel for defendant Allied Mortgage Capital Corporation